ACCEPTED
15-25-00136-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
8/18/2025 12:00 AM
CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
8/18/2025 12:00:00 AM
CHRISTOPHER A. PRINE
Clerk

No. 15-25-00136-CV

―――――――――――――――――――――――

## In the Court of Appeals for the Fifteenth Judicial District

―――――――――――――――――――――

*In re: Silver Star Properties REIT, Inc., et al., Relators*

Original Proceeding from the Texas Business Court,
Eighth Division, Fort Worth, Texas, Cause No. 25-BC08B-0016
Hon. Brian Stagner, Judge Presiding

―――――――――――――――――――――――――――――――――――――――――――――

## RELATORS' REPLY IN SUPPORT OF MOTION FOR EMERGENCY STAY

―――――――――――――――――――――――――――――――――――――――――――――

Relators file this Reply in support of their Motion for Emergency Stay of the proceedings below.

First, a court without subject-matter jurisdiction can only issue void orders or judgments. *See, e.g., In re Panchakarla, 602 S.W.3d 536, 539 (Tex.2020) (orig. proceeding)* ("If a trial court issues an order beyond its jurisdiction…such an order is void ab initio"). Thus, regardless of whether the Temporary Injunction hearing scheduled for August 20, 2025, would otherwise go forward, the stay Relators request is still necessary to prevent the Eighth Division from taking other action that may potentially result in void orders or judgments. That gives this Court a less rushed timeline to determine a question extremely important to the jurisprudence of this

State in an area of new and rapidly-expanding law – whether the Eighth Division actually has jurisdiction – and provide proper guidance to this and other Texas Business Courts likely to face this situation in the future. Relators disclosed the Temporary Injunction hearing as the next event likely to occur in the Eighth Division, so the Court would know it did not have to decide the Motion for Stay the same day it was filed – a decision on Monday or Tuesday would give the parties time to stand down if needed.

Second, Relators did not see the need initially to drag this Court "down in the weeds" of the injunctive relief itself, since Relators are not asking the Court to rule on those merits. However, the Opposition of the Real Parties in Interest grossly omits key facts that have occurred since the August 4, 2025, TRO was entered. The result is a distortion the Opposition then uses to impugn Relators' (and their counsel's) integrity, and so Relators will address them briefly here.

As demonstrated by the Declaration of Walter L. Taylor,[1] lead counsel for Relators, the 48th Judicial District Court of Tarrant County signed and entered the August 4, 2025, Temporary Restraining Order at 4:35 p.m. *Appendix 4*. The TRO expressly requires all funds *"currently"* in three specifically designated accounts, plus any rent collections received in such accounts thereafter, to be released to the

---

[1] Exhibit 1 to this Reply.

Silver Star Relators to pay operational expenses (up to a cap of $1.5 million). At or near the time Judge Taylor signed the TRO, Silver Star's Chief Financial Officer – Lou T. Fox, III, reviewed all three accounts and determined that at the time the TRO was signed the accounts held roughly $740,000. Approximately $129,000 in rent collections reached the account over the next two days.

On Tuesday, August 5, 2025, Relators learned roughly $507,000 had disappeared from their accounts – to which only they and the Real Parties in Interest had access. In an afternoon Microsoft Teams call Wednesday, August 6, 2025, the purpose of which to discuss the mechanism for releasing funds under the TRO, Mr. Lee Hart of Nelson Mullens (at the time merely a partner of lead counsel Jacob Sparks, now admitted *pro hac vice* in the Eighth Division) expressly denied orally that the Real Parties in Interest had made any such withdrawal. The following day, however, he admitted in an E-mail the withdrawal had occurred and promised the Real Parties in Interest would return the funds by August 7, 2025 (they didn't). *See Exhibit 2*. Accordingly, Relators made a disbursement request of $869,000 under the TRO. *Exhibit 3*.

On August 7, 2025, Mr. Hart revealed that not only had Real Parties in Interest removed the $507,000, they had actually paid it to third parties, and it would now "take a couple of days" to get it back. Although roughly $407,000 of the $869,000 did hit Silver Star's account on August 7, 2025, the balance was not received until

3

August 11, 2025 – a week after the TRO covering funds "currently" in the account was signed. In short, Relators' initial prioritization was based on the good faith belief they would have $869,000 in rent collections for urgent operational expenses. Relators understandably waited to make sure the Real Parties were actually going to return the roughly $507,000 taken after the TRO was signed, to ensure Relators would not have to re-prioritize a smaller amount. The TRO requires Relators to report payments made for operational expenses within five (5) days, so the remainder of expenses were accounted for today. *Exhibit 4.*[2]

Finally, with respect to the issue of conferring, when the undersigned notified Real Parties' lead counsel of the filing of the Petition for Writ of Mandamus yesterday and that an emergency motion for stay was coming, he received neither a reply nor a bounce-back E-mail indicating Mr. Sparks was out of the office. When the undersigned replied this morning in the same thread, he left the E-mail thread open so that if Mr. Sparks replied he would see it immediately. Seeing no reply, the undersigned filed the Emergency Motion this morning. Unfortunately, after filing the Emergency Motion and closing the E-mail thread, the undersigned did see after the fact that a bounce back had been received – just not in the same E-mail thread.

---

[2] In his Declaration, Mr. Taylor makes clear he does not impugn the personal integrity of Mr. Brent Buyse, who signed the Affidavit in support of the Real Parties' Opposition that omits these key facts. To the best of Mr. Taylor's recollection, Mr. Buyse was not present in the meetings described above, nor does he appear to have been copied on the E-mails attached.

Even so, the point is moot because Relators had notice under TRAP 52(10) the motion was coming, and they were able to file an Opposition twenty-four (24) hours later, to which the Court has access before deciding the issue. Thus, the conference on whether they were agreed or opposed is moot. Relators request the stay pending this Court's ruling on jurisdiction.

Respectfully submitted,

Walter L. Taylor
State Bar No. 19727030
*taylorlawfirmdfw@gmail.com*
TAYLOR LAW FIRM
6630 Colleyville Blvd, Suite 200
Colleyville, Texas 76034
Tel: (817) 770-4343
Tel: (512) 474-6600
Fax: (512) 474-6700
**ATTORNEY FOR RELATORS**

## CERTIFICATE OF SERVICE

I hereby certify by my signature above that a true and correct copy of the foregoing document has this day been served via certified mail, return receipt requested, electronic service, facsimile or hand delivery in open court, upon the Real Parties in Interest and Respondent on this 16th day of August, 2025:

**Jacob Sparks**
Email: *Jacob.Sparks@NelsonMullins.com*
**Brent T. Buyse**
Email: *Brent.Buyse@NelsonMullins.com*
**Xenna Davis**
Email: *Xenna.Davis@NelsonMullins.com*
**NELSON MULLINS RILEY &SCARBOROUGH, LLP**

Hon. Brian Stagner
Judge Presiding
Texas Business Court
Eighth Division
1515 Commerce Street, Ste. 170
Fort Worth, TX 76102
***BCDivision8B@txcourts.gov***

EXHIBIT 1

No. 15-25-00136-CV

_____

# In the Court of Appeals for the
# Fifteenth Judicial District

_____

*In re: Silver Star Properties REIT, Inc., et al., Relators*

Original Proceeding from the Texas Business Court,
Eighth Division, Fort Worth, Texas, Cause No. 25-BC08B-0016
Hon. Brian Stagner, Judge Presiding

_____

## <u>DECLARATION OF WALTER L. TAYLOR</u>

_____

"My name is Walter L. Taylor, my date of birth is June 9, 1964. I am over the age of 18 years and am fully competent to make this declaration. My law firm's address is 6630 Colleyville Blvd., Ste. 200, Colleyville, Texas 76034, USA. I am an attorney at Taylor Law Firm. I serve as counsel for Relators Silver Star Properties REIT, Inc., Silver Star CRE, LLC, Silver Star CRE II, LLC, and Silver Star Delray, LLC, in the above-captioned case. I declare under the penalty of perjury that the following is true and correct.

As shown in *Appendix 4* to the Petition for Writ of Mandamus, the 48th Judicial District Court of Tarrant County signed and entered the August 4, 2025, Temporary Restraining Order at 4:35 p.m. *Appendix 4*. The TRO expressly requires all funds *"<u>currently</u>"* in three specifically designated accounts, plus any rent collections received in such accounts thereafter, to be released to the Silver Star Relators to pay operational expenses (up to a cap of $1.5 million). At or near the time Judge Taylor signed the TRO, Silver Star's Chief Financial Officer – Lou T. Fox, III, reviewed all three accounts and determined that at the time the TRO was signed the accounts held roughly $740,000. Approximately $129,000 in rent collections reached the account over the next two days.

On Tuesday, August 5, 2025, however, Relators learned roughly $507,000 had disappeared from their accounts – to which, upon information and belief, only they and the Real Parties in Interest had access. Wednesday afternoon, August 6, 2025, in a Microsoft Teams video call to discuss the mechanism for releasing funds

Declaration of Walter L. Taylor, p. 1

under the TRO, I asked counsel for the Real Parties in Interest to explain the withdrawal. Mr. Lee Hart of Nelson Mullens (a partner of lead counsel Jacob Sparks, now admitted *pro hac vice* in the Eighth Division) initially denied that the Real Parties in Interest had made any such withdrawal. The following day, however, Mr. Hart admitted in an E-mail the withdrawal had occurred and promised that the Real Parties in Interest would return the funds by August 7, 2025. *See Exhibit 2*. Accordingly, Relators made a disbursement request of $869,000 under the TRO.

On August 7, 2025, Mr. Hart revealed that not only had Real Parties in Interest removed the $507,000, they had actually paid it to third parties, and it would now "take a couple of days" to get it back. Although roughly $407,000 of the $869,000 was returned account on August 7, 2025, the balance was not received until August 11, 2025 – a week after the TRO covering funds "currently" in the account was signed. Without my having to reveal privileged information, it should be clear from these facts that Relators' initial prioritization of operational expenses was based on their good faith belief they would have $869,000 in rent collections for urgent operational expenses. Finding themselves roughly $507,000 short, it would certainly be understandable if Relators waited to make sure the Real Parties in Interest were actually going to return the approximately $507,000 taken by the Real Parties in Interest, to ensure Relators would not have to re-prioritize a smaller amount. The TRO requires Relators to report payments made for operational expenses within five (5) days, so the remainder of expenses were accounted for today. *Exhibit 3*.[1] This report was sent shortly after Real Parties in Interest filed their Opposition claiming bad faith on the part of Relators.

With respect to the issue of conferring on the Motion for Emergency Stay, when I notified Real Parties' lead counsel of the filing of the Petition for Writ of Mandamus yesterday and that an emergency motion for stay was coming, I received neither a reply nor a bounce-back E-mail indicating Mr. Sparks was out of the office. When I inquired about opposition this morning in the same E-mail thread, I left the E-mail thread open so that if Mr. Sparks replied I would see it immediately. Seeing no reply, I filed the Emergency Motion this morning. Unfortunately, after filing the Emergency Motion and closing the E-mail thread, I did see after the fact that a bounce back had been received – just not in the same E-mail thread I'd kept open.

Walter L. Taylor */s/ Walter L. Taylor*

---

[1] I want to make clear it is not my intention to impugn the personal integrity of Mr. Brent Buyse, who signed the Affidavit in support of the Real Parties' Opposition omitting these key facts. My recollection is that Mr. Buyse was not present in the meetings described above, nor does he appear to have been copied on any of the E-mails attached.

 **Gmail**                                                      **Walt Taylor <taylorlawfirmdfw@gmail.com>**

---

## BSP TRO Funding No. 1

---

**Lee Hart** <lee.hart@nelsonmullins.com>                              Wed, Aug 6, 2025 at 4:24 PM
To: Walt Taylor <taylorlawfirmdfw@gmail.com>, Lou Fox <lfox@silverstarreit.com>
Cc: Gerald Haddock <gerald@silverstarreit.com>, Jacob Sparks <jacob.sparks@nelsonmullins.com>, Chester Grudzinski
<chester@silverstarreit.com>

Walt,


We've just spoken with Benefit Street.  This withdrawal was supposed to happen on Monday but did not
actually process until Tuesday, 8/5.  We do not agree with your characterization of the facts or the result
below and reserve rights on that (including, but not limited to, the intended scope of the order by the Court
and the actual time of its effectiveness).  That notwithstanding, in good faith effort to comply with what the
order eventually said, we have instructed the servicer to reverse the withdrawal, and you'll be able to see
those funds in the account sometime tomorrow morning.


Regarding the timing of the wire, the bank has not wired to the East West Bank account in your request
letter before, and we're told it will take 2-3 days to set up a new bank account.  We can either instruct them
go forward with that new bank account, or we can use the bank account that Benefit Street has historically
used when disbursing funds, which will get you money faster.  Let us know which option you choose.


Lee

[Quoted text hidden]

On Wed, Aug 6, 2025 at 3:34 PM Lou Fox <lfox@silverstarreit.com> wrote:

[Quoted text hidden]

                                              **Walt Taylor <taylorlawfirmdfw@gmail.com>**

## BSP TRO Funding No. 1

**Lee Hart** <lee.hart@nelsonmullins.com>                          Thu, Aug 7, 2025 at 4:49 PM
To: Lou Fox <lfox@silverstarreit.com>, Walt Taylor <taylorlawfirmdfw@gmail.com>
Cc: Gerald Haddock <gerald@silverstarreit.com>, Jacob Sparks <jacob.sparks@nelsonmullins.com>, Chester Grudzinski
<chester@silverstarreit.com>

Walt and Lou,


We wanted to let you know what the status of this is.  Unfortunately the funds were processed through the
system and distributed to pay third parties, so the reversal of the ~$500K of transfers will take a couple of
days.  That reversal process is underway.  In effort to demonstrate BSP's good faith efforts to comply with
its commitment to reverse the application in question (without admission that it was wrongful to begin with),
SS's operating account should have received about $427,000 today, which is the combined balance of the
office building and self storage account balances.  We will let you know when the third party disbursement
reversal is completed and can discuss wiring additional funds at that point.


Lee





**LEE B. HART  PARTNER**

lee.hart@nelsonmullins.com

**ATLANTIC STATION | SUITE 1700**

**201 17TH STREET NW | ATLANTA, GA 30363**

T **404.322.6349**   F **404.322.6050**

**NELSONMULLINS.COM    VCARD  VIEW BIO**


[Quoted text hidden]



**Walt Taylor <taylorlawfirmdfw@gmail.com>**

# RE: BSP TRO Payment Report
1 message

**Lou Fox** <lfox@silverstarreit.com>                                    Fri, Aug 15, 2025 at 2:17 PM
To: Lee Hart <lee.hart@nelsonmullins.com>, Walt Taylor <taylorlawfirmdfw@gmail.com>
Cc: Jacob Sparks <jacob.sparks@nelsonmullins.com>, Gerald Haddock <gerald@silverstarreit.com>

*Payment summary and detail report are attached.*

*Recap funds received/disbursed as of 8-14-2025:*

| | |
|---|---:|
| *BSP funding 8-8 through 8-13* | *$1,102,499.38* |
| *Disbursed – see summary report* | *(966,237.93)* |
| *Balance to disburse at 8-15-2025* | *$   136,261.45* |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Walter Taylor on behalf of Walter Taylor
Bar No. 19727030
taylorlawfirmdfw@gmail.com
Envelope ID: 104466128
Filing Code Description: Other Document
Filing Description: 2025.08.16 Reply in Support of Motion for Emergency Stay
Status as of 8/18/2025 7:15 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Walter Taylor | | taylorlawfirmdfw@gmail.com | 8/16/2025 7:47:30 AM | SENT |
| Walter Taylor | | taylorlawfirmdfw@gmail.com | 8/16/2025 7:47:30 AM | SENT |
| Walter Taylor | | taylorlawfirmdfw@gmail.com | 8/16/2025 7:47:30 AM | SENT |
| Walter Taylor | | taylorlawfirmdfw@gmail.com | 8/16/2025 7:47:30 AM | SENT |
| Jacob Sparks | | Jacob.Sparks@NelsonMullins.com | 8/16/2025 7:47:30 AM | SENT |
| Jacob Sparks | | Jacob.Sparks@NelsonMullins.com | 8/16/2025 7:47:30 AM | SENT |
| Jacob Sparks | | Jacob.Sparks@NelsonMullins.com | 8/16/2025 7:47:30 AM | SENT |
| Brent Buyse | | Brent.Buyse@NelsonMullins.com | 8/16/2025 7:47:30 AM | SENT |
| Brent Buyse | | Brent.Buyse@NelsonMullins.com | 8/16/2025 7:47:30 AM | SENT |
| Brent Buyse | | Brent.Buyse@NelsonMullins.com | 8/16/2025 7:47:30 AM | SENT |
| Xenna Davis | | Xenna.Davis@NelsonMullins.com | 8/16/2025 7:47:30 AM | SENT |
| Xenna Davis | | Xenna.Davis@NelsonMullins.com | 8/16/2025 7:47:30 AM | SENT |
| Xenna Davis | | Xenna.Davis@NelsonMullins.com | 8/16/2025 7:47:30 AM | SENT |
| Brian Stagner | | BCDivision8B@txcourts.gov | 8/16/2025 7:47:30 AM | SENT |
| Jessica Cannon | | jessica.cannon@nelsonmullins.com | 8/16/2025 7:47:30 AM | SENT |
| Mary Versfelt | | mary.versfelt@nelsonmullins.com | 8/16/2025 7:47:30 AM | SENT |